1  Gary R. Selvin, State Bar No. 112030
   Curtis R. Ogilvie, State Bar No. 111911
2  SELVIN WRAITH HALMAN LLP
   505 14th Street, Suite 1200
3  Oakland, CA 94612
   Telephone:    (510) 874-1811
4  Facsimile:    (510) 465-8976
   E-mail:  gselvin@selvinwraith.com
5          cogilvie@selvinwraith.com

6  Attorneys for Defendants and Cross-Defendants
   Arthur J. AJG & Co. and AJG-Pipino, Inc.
7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 SANTANA ROW HOTEL PARTNERS, LP,          CASE NO.: 5:05-cv-00198-JW

12          Plaintiff,                      **ARTHUR J. GALLAGHER & CO.'S
                                            MEMORANDUM OF POINTS AND
13     v.                                   AUTHORITIES IN SUPPORT OF MOTION
                                            FOR SUMMARY JUDGMENT, OR, IN THE
14 ZURICH AMERICAN INSURANCE                ALTERNATIVE, PARTIAL SUMMARY
   COMPANY,  ET AL.,                        JUDGMENT**
15
            Defendant.                      Date:   November 26, 2007
16                                          Time:  9:00 a.m.
   ─────────────────────────────────       Dept.:  8
17 AND ALL RELATED CROSS ACTIONS            Judge:  James Ware
                                            Complaint Filed:  January 12, 2005
18                                          Trial Date:  March 12, 2008
                                            (Accompanying Documents:  Notice of Motion; Declaration of
19                                          Curtis R. Ogilvie, [Proposed] Order)

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.    PRELIMINARY STATEMENT/RELIEF SOUGHT ................................................1

II.   STATEMENT OF FACTS ...........................................................................................1

    A.    Background ......................................................................................................1

    B.    The Evidence ...................................................................................................2

    C.    The Pleadings ................................................................................................10

III.  STATUTORY/CASE LAW AUTHORITY .............................................................11

IV.   SRHP'S CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE TWO-
      YEAR STATUTE OF LIMITATIONS ...................................................................12

    A.    The "Gravamen" Of All Three Of SRHP's Causes Of Action Alleged
          Against AJG Is For Professional Negligence .................................................12

    B.    Commencement Of The Statute Of Limitations .............................................15

V.    CONCLUSION .........................................................................................................17

**AJG.'S MPA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**
**CASE NO. 5:05-cv-0098 JW**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Valley Unified School District v. Vavrinek, Trine, Day & Co.*
(2002) 98 Cal.App.4th 934 ...................................................................................16

*Barton v. New United Motor Manufacturing, Inc.*
(1996) 43 Cal.App.4th 1200 ................................................................................11

*Friedman v. Merck & Company*
(2003) 107 Cal.App.4th 454 ...............................................................................13

*Hydro-Mill Co., Inc., v. Hayward, Tilton and Rolapp Ins. Associates, Inc.*
(2d Dist. 2004) 115 Cal.App.4th 1145 ...............................................12, 14, 15

*Leeper v. Beltrami*
(1959) 53 Cal.2d 195 ..........................................................................................11

*Marin Healthcare District v. Sutter Health*
(2002) 103 Cal.App.4th 861 ...............................................................................11

*Miller v. Lakeside Village Condominium Assn.*
(1991) 1 Cal.App.4th 1611 ..................................................................................15

*Norgart v. Upjohn*
(1999) 21 Cal.4th 383 .............................................................................12, 15, 16

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*
(1984) 36 Cal.3d 752 ...........................................................................................15

*Shamisan v. Atlantic Richfield Company*
(2003) 107 Cal.App.4th 967 ...............................................................................12

*Smyth v. USAA Property & Casualty Insurance Company*
(1992) 5 Cal.App.4th 1470 ..................................................................................13

*Ventura County National Bank v. Macker*
(1996) 49 Cal.App.4th 1528 ..........................................................................13, 14

*West v. Conrail*
(1987) 481 U.S. 35...............................................................................................11

*Williams v. Wells & Bennett Realtors*
(1997) 52 Cal.App.4th 857 ..................................................................................13

**Statutes**

28 U.S.C. § 1332.....................................................................................................11

California Code of Civil Procedure § 312 ...............................................................15

California Code of Civil Procedure § 337 ...............................................................12

California Code of Civil Procedure § 339 ...........................................................1, 11

ii

| | Page(s) |
|---|---|
| California Code of Civil Procedure § 366.3 | 15 |
| Federal Rule of Civil Procedure 56 | 1 |

**AJG.'S MPA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

# I. PRELIMINARY STATEMENT/RELIEF SOUGHT

The case at bar is an insurance coverage action arising out of an August 19, 2002 fire at the Santana Row project in San Jose, California and brought by Santana Row Hotel Partners ("SRHP"), the developer of a Hotel located within this project.

It is uncontroverted that by the end of 2002 SRHP had sustained damages and had full knowledge of the facts upon which it would ultimately allege professional negligence claims against Arthur J. Gallagher & Co. ("AJG"). In December, 2002 the insurer for the project, Zurich American Insurance Company ("ZURICH") was questioning whether SRHP was afforded certain coverage under a builder's risk policy; specifically, whether the Hotel had been added to the policy as a Named Insured and thereby covered under the Delay in Completion Endorsement to a policy issued to Federal Realty Investment Trust ("FRIT"). During the ensuing months, ZURICH repeated these concerns during numerous meetings with SRHP representatives. These discussions culminated on September 18, 2003, when ZURICH issued a denial of SRHP's claim for Delay in Completion coverage for the Hotel.

AJG was not named as a defendant until SRHP filed its First Amended Complaint ("FAC") in November of 2005. All of SRHP's causes of action against AJG on each cause of action, (1) for Breach of a Third Party Beneficiary Contract, (2) for Fraud, and (3) Breach of Duty. Regardless of appellation, each amounts to a claim for professional negligence with a two-year statute of limitations. As these causes of action accrued in December 2002, more than two years before AJG was named as a defendant, all are barred by the Statute of Limitations embodied in California Code of Civil Procedure § 339.

Pursuant to Federal Rule of Civil Procedure 56, AJG seeks summary judgment as to these causes of action.

# II. STATEMENT OF FACTS

## A. Background

The Hotel Valencia, which is the subject of this litigation, occupies a portion of a large commercial/retail/residential development in San Jose, California known as Santana Row.

On August 19, 2002, a fire at occurred during the construction of Santana Row, causing minor

damage to the Hotel.  Following the fire, SRHP sought to establish coverage for various direct and indirect losses resulting from the fire, including the alleged delay in opening of the Hotel occasioned by the fire.

The dispute between SRHP and AJG in this litigation concerns the availability of Delay in Completion coverage for the Hotel under the policy issued to FRIT by ZURICH, and the question of what representations were made to SRHP concerning this Delay in Completion coverage.

**B.     The Evidence**

Harvey Goodman is President of Goodman Gable Gould and is Executive Vice President of Adjuster's International, President of Rollins Accounting, and a shareholder of FRIT.

Mr. Goodman was retained by FRIT and SRHP immediately after the fire to assist them in their insurance claim with ZURICH.  He testified that the he learned that there was a coverage issue regarding the Hotel's coverage under the ZURICH policy issued to FRIT in November or December 2002, when Jack Healy, ZURICH's Executive General Adjuster, raised the issue.  Mr. Goodman emphatically testified there was little question that ZURICH was not extending coverage for certain of SRHP's claims:

> Q.     At the time Goodman-Gable-Gould was engaged by Santana Row Hotel Partners, did you have any reason to believe that there was going to be a coverage issue or a problem with coverage under the Zurich builders risk policy for Santana Row Hotel Partners?
>
> A.     No.  As of the date we were retained, we were not aware of any issue with coverage.
>
> Q.     When did you first become aware of any issue with coverage for Santana Row Hotel Partners?
>
> A.     Several months later.
>
> Q.     And what was the first inkling that there was a question regarding coverage by Zurich under the Builders Risk policy?
>
> A.     We had biweekly meetings.  When I say biweekly, we scheduled meetings every two weeks.  It may be because of a Labor Day holiday or Thanksgiving or Halloween or something, you now, some kid's basketball game that we couldn't schedule it, that it would be every three weeks.  We tried every two weeks to have a meeting with Jack Healy and I.  There was another gentleman working for Zurich at the time, Lee Christmann, who attended all the meetings early on.  Dan Fabian or Chris Reath (phonetic) attended some of them. Dawn Becker attended most of them.  **And at one of those meetings in**

**the late fall/early winter Jack raised the issue that there was a coverage issue. That's the first time I recall it becoming an issue.**

Q.   Can you be any more specific with respect to a time frame?

A.   I don't know the exact date. **I want to say it was sometime in November, December of '02.**

Excerpts of Deposition of Harvey M. Goodman, ("Goodman Depo.") attached as Exhibit A to Declaration of Curtis R. Ogilvie ("Ogilvie Decl.") at pp. 29:7-30:16; **emphasis added.**

Specifically, Goodman recalls that on December 19, 2002, ZURICH began questioning whether SRHP was insured under the policy. He testified that he told SRHP that same day that ZURICH was questioning coverage:

Q.   You mentioned earlier that you became aware at some point that Zurich was questioning whether or not Santana Row Hotel Partners was insured under the policy. Do you recall that testimony?

A.   Yes.

Q.   You believe that occurred sometime in late November, early December, correct?

A.   I believe but I'm not certain that that's exactly…

Q.   Can you give me some context as to when and how that information was relayed to you?

A.   I believe Jack Healy communicated that to me. I can't tell you for sure but I think I testified earlier **I thought he did it at one of our biweekly meetings.** Whether it was in Rockville or California I couldn't tell you for sure but we had discussed and we had provided him the certificate of insurance. I think you have a document where Tony D'Amico supplied him one but I thought we had supplied it to him earlier but maybe that's the only time we supplied it to him. And he said that he – Zurich didn't have a record of that. I was a little surprised. That's what – I remember him communicating that to us. I'm pretty sure it was verbally.

Q.   Zurich communicated to you that they didn't think that Santana Row Hotel Partners was covered under the builders risk policy, correct?

A.   I didn't think he said that. Jack is very careful in how he chooses his words. Jack would have said – he wouldn't have said they are not covered, **he would have said we are not acknowledging they are covered.**

Q.   **That's significant for your client, Santana Row Hotel Partners, isn't it?**

A.   **Yes.**

Q.      **The carrier is saying, hey, we are not acknowledging that they are insured under out policy, isn't it?**

A.      **Yes.**

Q.      **And that was communicated to you in late November/early December 2002, correct?**

A.      **I believe that's when it was.**

Q.      **Did you advise your client, Santana Row Hotel Partners, of that important development?**

A.      **I believe we did, yes.**

Q.      **When did you advise them of that?**

A.      **I don't recall exactly.  Probably that day.  Probably would have picked up the phone and called them.**

(Goodman Depo. pp. 115:6-117:12; **emphasis added**.)

Goodman testified that ZURICH's questioning of SRHP's status under the FRIT policy was expressed at meetings held during December of 2002:

Q.      I'd like to show you Exhibit 249.  Is this a document that Goodman-Gable-Gould prepared?

A.      It appears to be.

Q.      This is another agenda for an insurance meeting with Zurich, correct?

A.      14 days after the last one.

Q.      **December 19, 2002?**

A.      That's correct.

Q.      Item number 4A asks for copies of insurance policy and declaration page.  Why is that on this agenda?

A.      They probably asked for a copy of declaration which they had their own policy.  I'm not sure why but if they asked for something to be put on the agenda, we put it on.

Q.      Look at item 4E, status at 8-19-02.  What does that refer to?

A.      8-19-02 is the date of loss.  So they probably wanted to discuss the status as of the date of loss.

Q.      Status of Santana Row Hotel Partners as an insured as of the date of loss?

A.      That would be my assumption, yes.

4

Q.      **So, again, it was a question in December whether or not Santana Row Hotel Partners was even an insured under the Zurich Builders Risk policy, wasn't it, at least from Zurich's standpoint?**

A.      **At least from Zurich's standpoint, yes.**

Q.      **That was communicated to you, correct?**

A.      **Yes.**

Q.      **And you communicated that to Santana Row Hotel Partners?**

A.      **Yes.**

(Goodman Depo. pp. 132:2-133:18; **emphasis added**.  Exhibit 249, attached as Exhibit B to Ogilvie Decl.)

ZURICH's refusal to extend Delay in Completion coverage to SRHP under the FRIT policy continued during meetings held with the SRHP representative through July of 2003:

Q.      …Exhibit 395 is Bates numbered ZCS-8198 through 8199.  It's an agenda for a Wednesday, April 19, 2003 meeting.  Have you seen this document before?

A.      It's actually Wednesday, April 9th.

Q.      Wednesday, **April 9, 2003**.  Have you seen this document before?

A.      I'm sure I have.

Q.      Do you believe you attended this meeting?

A.      I believe I did.

Q.      Do you know who prepared this agenda?

A.      Again, same person. These were prepared, I believe, by Bill Greenspan and I with some input from Jack Healy or Dixon Grier. Anybody that wanted something on here and they told us, we put it on.

Q.      **Can you read item 4A into the record for me?**

A.      **"Valencia Hotel.  Evidence of other coverage and Zurich proof of coverage."**

Q.      **What was meant by Zurich proof of coverage?**

A.      I believe what was meant by **Zurich was still resisting the coverage** and they were looking for additional documentation.

Q.      Okay.  Mark Number 396.  (Goodman Deposition Exhibit Number 396 was marked for purposes of identification.)  This is a

5

1    document Bates numbered ZCS-8177-8178.  Have you seen this
     document before?
2
     A.      Yes.
3
     Q.      Is this a document that Goodman-Gable-Gould prepared?
4
     A.      Yes.
5
     Q.      That's an agenda for Wednesday, **April 23, 2003**, correct?
6
     A.      14 days after the last meeting.
7
     Q.      At this point, as you'll see in item 4A, **Zurich is still asking for
8    support showing that Santana Row Hotel Partners is covered
     under the builders risk policy, correct?**
9
     **A.      Well, they are still asking for evidence of coverage and
10   Zurich's proof of coverage, yes.**
11   **Q.      In fact, Zurich continued to ask for that information for
     months and months and months after the April 23rd meeting, didn't
12   it?**
13   **Mr. Ellenberg:  The question is vague and ambiguous.**
14   **A.      Well, we're in a lawsuit, aren't we?  They're still looking for
     this and they haven't found it.**
15
     Mr. Ellenberg:  Would you please just answer the question?  (Goodman
16   Deposition Exhibit Number 397 was marked for purposes of
     identification.)
17
     Q.      I show you 397, bates numbered ZCS-8647 to 8648.  Have you
18   seen this document before?
19   A.      Yes.
20   Q.      Is this a document that Goodman-Gable-Gould prepared?
21   A.      Yes.
22   Q.      As of the Thursday, **May 22, 2003 meeting, Zurich was still
     asking for proof of coverage** for Santana Row Hotel Partners under
23   the Zurich builders risk policy, correct?
24   A.      **They were asking for additional proof of coverage.**
25   (Goodman Depo. pp. 148:7-151:8; **emphasis added**.  Exhibits 395, 396, and 397 attached as Exhibits
26   C, D, and E to Ogilvie Decl.)
27   Q.      This is a two-page document Bates numbered 12751 to 12752.
     I'll ask you, Mr. Goodman, apart from the handwriting that appears on
28   this document, have you ever seen this document before?

A.     Yes.

Q.     Was this a document that was prepared by Goodman-Gable-Gould?

A.     Yes.

Q.     Do you recognize the handwriting on the document?

A.     I can't say that I do.

Q.     It is true that as of **June 19, 2003 Zurich was still asking for proof that Santana Row Hotel Partners was covered under the Zurich builders risk policy?**

THE WITNESS:  Could you read me back the question?

(The reporter read back as requested.)

A.     **They were asking for additional proof,** yes.  (Goodman Deposition Exhibit Number 399 was marked for purposes of identification.)

Q.     This is a two-page document numbered ZCS 10948 to 10949. Mr. Goodman, have you ever seen this document before?

A.     Yes.

Q.     Is this a document that Goodman-Gable-Gould prepared?

A.     Yes.

Q.     Did you attend the meeting on Tuesday, **July 1, 2003** referenced in this agenda?

A.     Yes.

Q.     Is it true that **as of that date Zurich was still asking for proof that Santana Row Hotel Partners was covered under the Zurich builders risk policy?**

A.     **They were still asking for additional proof, yes**.

(Goodman Depo. pp. 152:9-154:7; **emphasis added**; Exhibit 399, attached as Exhibit F to Ogilvie

Decl.)

Q.     Is it true that **as of July 16, 2003, Zurich was still asking Santana Row Hotel Partners for support for the notion that Santana Row Hotel Partners was covered under the Zurich builders risk polic**y in addition to the two evidence of property insurance forms that were previously provided?

A.     **Yes.**  (Goodman Deposition Exhibit Number 401 was marked for purposed of identification.)

7

Q.     Exhibit 401 is also an agenda dated Thursday, July 31, Bates numbered ZCS9477 through 9478.

A.     Is yours a four-page document?

Q.     Yes, mine is four pages.

A.     I'm missing a 79 in between.  I've got 77, 78, 80 and 81.

Q.     These are two different agendas, We'll just keep them as the same Exhibit 401.  Are these two agendas contained in Exhibit 401 documents that were prepared by Goodman-Gable-Gould?

A.     Well, one is.  The other one's got somebody's handwritten notes on it and I can't tell you whose notes those are.

Q.     Independent of the handwritten notes, were these both prepared by Goodman-Gable-Gould?

A.     Independent of the notes, they are the same document.

Q.     These were the same date?  You're correct.  My apologies.

A.     None needed.

Q.     **Is it correct that as of July 31, 2003 Zurich was still asking for documentation other than the two evidence of property insurance forms that were provided to support the notion that Santana Row Hotel Partners was covered under the Zurich builders risk policy prior to the fire?**

A.     **Yes.**

(Goodman Depo. pp. 155:1-156:15; **emphasis added**; Exhibit 401 attached as Exhibit G to Ogilvie Decl.)

John Healy, ZURICH's executive general adjustor responsible for the Santana Row loss, corroborated Goodman's testimony from ZURICH's perspective, testifying:

Q.     Did there come a time when you learned that the owner of the Hotel Valencia at Santana Row was an entity called Santana Row Hotel Partners?

A.     Yes.

Q.     And when was that in relationship to the fire?

A.     I – I don't recall the – the time.  It was a couple of months after the – the date of the loss.

Q.     **And did you make any attempt to determine whether or not coverage existed for any losses suffered by the Santana Row Hotel partners?**

**A.   Yes.**

**Q.   What did you do to find out whether coverage existed?**

Mr. Turner:  Calls for a narrative.

The WITNESS:  **I believe we contacted the underwriter, and he indicated that there was no coverage for the hotel.**  And then we at one of our meetings with FRIT, we asked them if they had any evidence that there was insurance coverage for the hotel.

(Deposition of John Healy ("Healy Depo.") attached as Exhibit H to Ogilvie Decl., at pp. 37:23-38:17.)

**Q.   Do you recall who from FRIT that you spoke with about the issue of whether or not coverage existed for the hotel"**

A.   I know I spoke with Dawn Becker about it and also Harvey Goodman and Tony D'Amico.

Q.   And do you recall where you – Do you recall whether you spoke with these individuals on more than one occasion about the issue of coverage?

A.   **Yes.**

Q.   On how many occasions?

A.   I don't recall how many occasions, but **it was usually on the agenda for our meetings every two weeks.**

(Healy Depo. p. 40:4-15.)

Contemporaneous with the above referenced July 31, 2003 meeting, and learning of ZURICH's continuing refusal to accept coverage for the Hotel, SRHP decided to prepare and tender its claim to ZURICH under the Delay in Completion Endorsement to the policy issued to FRIT. (Exhibit 402 attached as Exhibit I to Ogilvie Decl.)

On September 18, 2003, ZURICH issued its denial of SRHP's claims:

Q.   Have you seen Exhibit 16 – Let me identify Exhibit 163 first. It's a document entitled – it's a letter from – purports to be from Mr. Healy to Ms. Becker dated **September 18, 2003**, ZUR 00146 through ZUR 00154.  do you recognize this document?

A.   Yes, I do.

Q.   What is it?

A.   **It's a denial letter to Federal Realty for the hotel**.

Q.   And did you author it?

9

A.    Yes, sir, with – in conjunction with Jonathan Gross, our outside counsel.

Q.    And did you perform any investigation into the truth of the statements contained in this letter?

Mr. Turner:  Objection.  Vague.

THE WITNESS:  I guess to answer your question would be yes.

(Healy Depo. p. 161:8-25; Exhibit 163, attached as Exhibit J to Ogilvie Decl.)

**C.    The Pleadings**

In September of 2004, and cognizant that the statute of limitations of its legal remedies was about to expire under the applicable two-year statute of limitations, SRHP obtained from ZURICH an extension of this statute of limitations time ("applicable to the claims asserted against ZURICH") through January 31, 2005.  (Complaint at ¶13.)   It never sought an extension from any other party.

On January 12, 2005, over two years after Healy had reported ZURICH's questioning of SRHP's status under the FRIT policy, SRHP filed its Complaint naming as the sole defendants ZURICH, and Gallagher-Pipino, Inc. ("G-P") as ZURICH's agent "for purposes of binding, contracting for and documenting policies of insurance."

On November 30, 2005, nearly three years after Goodman had reported ZURICH's questioning of SRHP's status under the FRIT policy, and over three years after the fire, SRHP filed its  First Amended Complaint ("FAC;" Document 58) naming AJG as a defendant for the first time.

The FAC identified AJG as an entity "retained" by G-P to "place and administer the policy of insurance with respect to the development where the Hotel is located," and alleged that the claims against GALLAGHER arose out of their alleged failure to comply with their contractual obligations (with ZURICH) and duty to SRHP to insure SRHP for losses resulting from Delay in Completion. The sixth cause of action denominated "Fraud" alleged that GALLAGHER *misrepresented this failure* through oral communications and the issuance of three "Evidence of Property Insurance" certificates.

The FAC did not set forth any facts alleging the delayed discovery of SRHP's causes of action against AJG.

### III. STATUTORY/CASE LAW AUTHORITY

This Court has exercised diversity jurisdiction over the subject litigation under 28 U.S.C. § 1332. In a diversity action, the district court applies the statue of limitations of the state in which it sits. *West v. Conrail* (1987) 481 U.S. 35, 39.

The statute of limitations to be applied in a particular case is determined by the essence of the cause of action, i.e., the "gravamen" of the cause of action. "The nature of the right sued upon and not the form of the action *not the relief demanded* determines the applicability of the statute of limitations under our code." *Marin Healthcare District v. Sutter Health* (2002) 103 Cal.App.4th 861, 874-875. (*Emphasis added.*) What is significant for statute of limitations purposes is the primary interest invaded by the defendant's alleged wrongful conduct. *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207. It is a long-established principle of California jurisprudence that a judicial assessment of the proper statute of limitations requires review "beyond the relief sought and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief." *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 214. If the gravamen of the action is held to be a tort, the action though in form stating other causes of action, is subject to the tort limitation. 3 Witkin Cal. Procedure (4th ed. 1996) Actions § 474, p. 599.

California Code of Civil Procedure ("C.C.P.") section 339 reads in pertinent part:

> Within two years: 1. an action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the commercial Code or subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder.

This two-year statute of limitations governs a lawsuit against an insurance broker where the gravamen of the lawsuit is a tort. The limitations period starts to run when the insured sustains appreciable and actual damage, even though the insured continues to sustain damage after the limitations period starts to run. In a professional malpractice context, accrual of the cause of action does not await the plaintiff's discovery that the facts constituting the wrongful act or omission

constitute professional negligence. Once the plaintiff has suffered appreciable harm and knows or suspects that professional misconduct is its cause, the statute of limitations begins to run. *Norgart v. Upjohn Company* (1999) 21 Cal.4th 383, 397.

The limitations period on the action against the broker is not tolled while the insurer investigates and considers the insured's claim. *Hydro-Mill Co., Inc., v. Hayward, Tilton and Rolapp Ins. Associates, Inc.* (2d Dist. 2004) 115 Cal.App.4th 1145.

## IV. SRHP'S CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS

### A. The "Gravamen" Of All Three Of SRHP's Causes Of Action Alleged Against AJG Is For Professional Negligence

SRHP's fifth cause of action pled against AJG (Breach of Third Party Beneficiary Contract) is not one immediately resting in or growing out of that written instrument under C.C.P. § 337. There is no evidence of a contract between SRHP and AJG. Instead, SRHP pled a "quasi-contract" cause of action "based upon a contract…not founded upon a written instrument" and accordingly, as specified by C.C.P. § 339(1), subject to the two-year statute of limitations.

Both SRHP's sixth cause of action (Fraud) and seventh cause of action (Breach of Duty) against AJG assert that as an insurance broker, AJG did not obtain the coverage requested by SRHP (asserted in the Breach of Duty cause of action), and misrepresented that represented that proper coverage had in fact been obtained (asserted in the cause of action denominated "Fraud"). These claims all arise from a single primary right, and constitute a professional negligence claim.

The elements of negligent misrepresentation are well established. A plaintiff must prove the following in order to recover: "[M]isrepresentation of a past or existing material fact, without a reasonable ground for believing it to be true, and with the intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage…" *Shamisan v. Atlantic Richfield Company* (2003) 107 Cal.App.4th 967, 983. California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information where information is conveyed in a commercial setting for a business purpose. *Friedman v. Merck & Company* (2003) 107 Cal.App.4th 454, 477. Liability for negligent representation is imposed only on those who supply information for

business purposes in the course of a business or profession: "[M]any familiar forms of negligent conduct may be said to involve an element of 'misrepresentation' in the generic sense of that word, but so far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit," and has been confined to "the invasion of interests of a financial or commercial character, in the course of business dealings…" *Friedman v. Merck & Company, supra,* 107 Cal.App.4th at pp. 481-482. The basis for liability in misrepresentation by those in the business of providing information is negligence. *Williams v. Wells & Bennett Realtors* (1997) 52 Cal.App.4th 857, 864.

A cause of action for negligent misrepresentation is barred by the two-year statute of limitations where the allegations amount to a claim of professional negligence. *Smyth v. USAA Property & Casualty Insurance Company* (1992) 5 Cal.App.4th 1470, 1476-1478; *Ventura County National Bank v. Macke*r (1996) 49 Cal.App.4th 1528-1531; 3 Witkin, Cal. Procedure, (4th ed. 1997) Actions, § 576 p.730; *id*. (2007 supp.) § 576, p. 203.

In *Smyth*, the plaintiff unsuccessfully tendered his defense in a third party action, and thereafter sued his insurer, alleging that the defendants had falsely stated that no coverage was in effect. The Court of Appeal subsequently sustained the insurer's demurrer on the expiration of the **two-year** statute of limitation, explaining that both the negligent misrepresentation and bad faith refusal to defend causes of action were based upon the same facts. "[The insured] alleged that [the insurer] repeatedly denied the existence of current policies without exercising reasonable diligence to ascertain the truth of this assertion. The essence of such allegations is that [the insurer] tortiously invaded [the insured's] property right to be secure from the risk of financial loss. Under the facts alleged, the applicable statute of limitations is…two years." *Smyth, supra*, 5 Cal.App.4th at pp. 1477-1478.

Similarly, in the case at bar, all of SRHP's causes of action are based upon the same alleged facts, e.g., that AJG breached an obligation to secure insurance coverage for SRHP and subsequently misrepresented this alleged breach. The primary interest invaded by AJG's alleged wrongful conduct was SRHP's right to be secure from the risk of financial loss. As in *Smyth*, the nature of the right sued upon (not the form of the action or the relief demanded) sounds in tort and yields a two-year

stature of limitations.

In *Ventura County National Bank*, a bank sued a group of accountants for negligent misrepresentation, alleging false representations in an audit report of a company's financial statements knowing that the bank would rely upon the report in offering the company a line of credit. In rejecting plaintiff's contention that misrepresentation is a form of fraud (triggering a three year statute of limitation), and concluding that the claims were time barred under the two-year statute of limitations codified in C.C.P. § 339, the Court of Appeal stated "[T]he essence of this cause of action is negligence, not fraud. [The] allegations assert a failure to meet a standard of reasonable care which results in the tortuous invasion of a property right…[¶]…Negligent misrepresentation is born of the union of negligence and fraud. If negligence is the mother and misrepresentation the father, it more closely resembles the mother." The Court held that C.C.P. § 339 barred the action. *Ventura County National Bank, v. Macker, supra,* 49 Cal.App.4th at pp. 1529-1531.

In *Hydro-Mill Company, Inc.*, an aircraft manufacturer sued its broker, alleging the broker's failure to obtain the insurance coverage requested by the manufacturer constituted a breach of a fiduciary duty and triggered a four year statute of limitations under C.C.P. § 343. In declining to apply this four-year statute, the Court of Appeal reasoned that all theories of liability asserted against the broker were predicated on the same allegations: that the broker "failed to obtain the requested coverage and did not disclose that failure. In short, Hydro-Mill's causes of action, regardless of appellation, amount to a claim of professional negligence. Because a two-year statute of limitations governs that type of claim, (§ 339), Hydro Mill cannot prolong the limitations period by invoking a fiduciary theory of liability." *Hydro-Mill Co., Inc., v. Hayward, Tilton and Rolapp Ins. Associates, Inc. supra*, 115 Cal.App.4th at 1159.

Similarly, in the case at bar, liability on SRHP's fraud cause of action was based upon AJG's alleged failure to obtain the requested coverage and the subsequent false statements that the proper coverage had been obtained – the very same facts supporting liability on the breach of duty cause of action. Where, as here, a plaintiff alleges that a defendant sought to shield itself from liability by misrepresenting the existence of an insuring agreement, **the action sounds in tort**. *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 769.

SRHP's transparent inclusion of the fraud cause of action to prolong the two-year statute of limitations (patently applicable to the fifth and seventh causes of action) is as unavailing as plaintiff's similar effort in *Hydro-Mill*.   The gravamen of the suit against AJG is AJG's alleged failure to execute its obligations as an insurance broker.  The two year period for professional negligence applies to the cause of action denominated "fraud," rendering it, along with the fifth and seventh causes of action, untimely.

All of the facts underlying SRHP's allegations of breach of duty subsume all of the allegations for fraud.  Liability on all causes of action against AJG are predicated on the same findings: SRHP alleges that AJG failed to obtain the requested coverage and misrepresented that failure.  SRHP's causes of action, regardless of appellation, amount to a claim of professional negligence.  Because a two-year statute of limitations governs that type of claim, SRHP cannot prolong the limitations period by invoking a fraud cause of action.

SRHP learned fairly quickly after the fire, certainly no later than December 19, 2002 that ZURICH was questioning whether they were covered under the builder's risk policy.  It knew more than two years before suing AJG of ZURICH's coverage position.  Accordingly, SRHP's causes of action against AJG accrued on that date.  The statute of limitations on these causes of action expired on December 19, 2004, over 11 months before AJG was named as a defendant in this litigation.

**B.**    **Commencement Of The Statute Of Limitations**

Civil actions, without exception, can only be commenced within the periods prescribed in C.C.P. §§ 312 to 366.3.  The general rule for defining the accrual of a cause of action sets the date as the time "when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises.  (*Norgart v. Upjohn, supra,* 21 Cal.4th at 397.  The infliction of actual and appreciable harm, however uncertain in amount, will commence the statutory period.  Neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations. *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622.  In a professional malpractice context, accrual of the cause of action does not await the plaintiff's discovery that the facts constituting the wrongful act or omission constitute professional negligence, i.e., the plaintiff's discovery that a particular legal theory is applicable based on the known facts.  If

one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that the professional has not yet advised the plaintiff of the mistake does not postpone the commencement of the limitations period. *Norgart v. Upjohn Company, supra*, 21 Cal.4th at p.398, fn.2; *Apple Valley Unified School District v. Vavrinek, Trine, Day & Co*. (2002) 98 Cal.App.4th 934, 942.

The event giving rise to SRHP's insurance claim – the August 19, 2002 fire – was sudden, brief, and of sufficient magnitude to raise immediate concerns about extensive property damage. SRHP learned fairly quickly after the fire of AJG's potential failure to procure coverage that SRHP believed it was entitled to. By December of 2002, SRHP, through its public adjustor Harvey Goodman, knew that ZURICH was questioning coverage. ZURICH's continuing failures to acknowledge coverage during the ensuing months (*ante* at p.4:7 – p.8:12) were equally well known to SRHP; since Goodman was acting as SRHP's agent regarding the insurance claim, his testimony is sufficient evidence for summary judgment on the statute of limitations regarding all of SRHP's claims against AJG.

An exception to the general rule that a cause of action accrues on the date of injury is the "delayed discovery" rule; however, the SAC does not plead any "delayed discovery" facts.

Plaintiff need not be aware of "specific facts necessary to establish the cause of action" to trigger the limitations period under the delayed discovery rule. That is a process contemplated by pretrial discovery. Rather, once the "reasonable suspicion of wrongdoing" has triggered the limitations period, and "within the applicable limitations period, he must learn the facts necessary to bring the cause of action in the first place – ***he cannot wait for [the facts] to find him and sit on his rights; he must go find them himself***…" *Nogart* at 398 [Emphasis added.] Moreover, a plaintiff's mere belief that someone has done "something wrong" is deemed sufficient, in and of itself, to alert plaintiff to the necessity of investigation and pursuit of appropriate legal remedies.

Under each element of this rule, SRHP had the requisite knowledge or suspicion to commence the accrual of the limitations period in December of 2002. Indeed, Harvey Goodman, who was representing SRHP during ZURICH's claims investigation, testified he not only had knowledge that ZURICH was disputing coverage in December of 2002, but also communicated this information

directly to his client (SRHP). Having received actual notice of the facts supporting its claim against AJG in December of 2002, SRHP elected to wait two and a half years to name AJG as a defendant.

## V.    CONCLUSION

In September of 2003, SRHP obtained (from ZURICH alone) an extension of time, through January 31, 2005, to file its complaint.  It is patently clear that this extension was obtained for one reason: SRHP knew that the statute of limitations was about to expire as to ZURICH.  It is equally clear that SRHP had actual notice (through it's representative Harvey Goodman) of the facts supporting a claim of liability against AJG.  SRHP's claims against AJG expired in December of 2004, six months before AJG was named as a defendant in the First Amended Complaint.

Because the gravamen of this lawsuit is AJG's alleged failure to execute its obligations as an insurance broker, the two year statute of limitations period for professional negligence applies to all causes of action irrespective of their denomination. SRHP's failure to file suit against AJG within two years of discovering the facts supporting its allegations against AJG renders the claims against AJG untimely.

Accordingly, AJG requests that judgment be entered in its favor and that it be awarded costs of suit and other relief as this Court deems appropriate.

Dated:  October 15, 2007                        SELVIN WRAITH HALMAN LLP


By: /s/_____
        Gary R. Selvin
        Curtis R. Ogilvie
        Attorneys for Defendants and Cross-Defendants
        Arthur J. AJG & Co. and AJG-Pipino, Inc.